

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

**ENTERED**
**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

*[signature]*
**United States Bankruptcy Judge**

**Signed July 13, 2010**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| YELITZA JEAN PASTRAN, | § | CASE NO. 06-34728-SGJ-13 |
| | § | |
| DEBTOR. | § | |

**MEMORANDUM OPINION AND ORDER DENYING MOTIONS OF AMERICAN HOME MORTGAGE SERVICING, INC. FOR RELIEF FROM THE AUTOMATIC STAY OF AN ACT AGAINST PROPERTY OF 11 U.S.C. § 362 (REGARDING 309 SHELLEY CIRCLE, IRVING, TEXAS 75061) AND FOR RELIEF FROM CO-DEBTOR STAY OF 11 U.S.C. § 1301(RELATED TO DOC. NOS. 58 & 59)**

Before this court are: (a) the Motion of American Home Mortgage Servicing, Inc. ("AHMS"), as Attorney-in-Fact and Servicer-in-Fact for Deutsche Bank National Trust Company, as Trustee in Trust for the Benefit of the Certificate Holders for Argent Securities Trust 2004-W9, Asset-Backed Pass-Through Certificates, Series 2004-W9 for Relief from the Automatic Stay of an Act Against Property of 11 U.S.C. § 362 Regarding 309 Shelley Circle, Irving, Texas 75061 (DE # 58); and (b) the Motion of AHMS for Relief from the Automatic Stay of an Act Again Co-

Debtor of 11 U.S.C. § 1301 (DE # 59) (collectively, the "Motions for Relief from Stay"). A preliminary hearing on the Motions for Relief From Stay was held January 7, 2010 and a final hearing was held on February 1, 2010. Certain post-trial briefing was subsequently submitted. For the reasons set forth in this memorandum opinion, the court denies the Motions for Relief from Stay without prejudice to AHMS filing a subsequent motion that is consistent with the ruling below.

The court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(G). This memorandum opinion constitutes the court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. Where appropriate, a finding of fact will be construed as a conclusion of law and *vice versa*.

I.  **FINDINGS OF FACT**

   *A.  The Note and Deed of Trust*

On or about December 5, 2003, Yelitza Jean Pastran (the "Debtor") executed an Adjustable Rate Note[1] (the "Note") in the original principal amount of $92,800, bearing interest at the initial rate of 7.850% per annum, and being payable to Argent Mortgage Company, LLC ("Argent").[2] The Note is secured by that

---

[1] *See* Debtor's Exhibit 1.

[2] It should be noted that AHMS attempted to introduce its own version of the Note, AHMS' Exhibit 1, after the evidentiary record was closed. AHMS' version of the Note contained various

certain Deed of Trust (the "Deed of Trust") dated December 5, 2003 and executed by the Debtor and the Co-Debtor, David Pastran, which gave Argent a valid lien on improved real property in Dallas County, Texas, being further described as follows:

> LEGAL DESCRIPTION MORE PARTICULARLY DESCRIBED ON THE DEED OF TRUST AND LOT 18, BLOCK 2, OF HIGHLAND PARK ESTATES, AN ADDITION TO THE CITY OF IRVING, DALLAS COUNTY, TEXAS, ACCORDING TO THE MAP THEREOF RECORDED IN VOLUME 46, PAGE 5, OF THE MAP RECORDS OF DALLAS COUNTY, TEXAS AND PROPERTY MORE COMMONLY KNOWN AS 309 SHELLEY CIRCLE, IRVING, TEXAS 75061

(the "Property").[3]

Subsequent to the Note and Deed of Trust being signed, an entity known as Argent Securities Inc.,[4] as depositor, Ameriquest Mortgage Company ("Ameriquest"), as master servicer, and Deutsche Bank National Trust Company, as trustee ("Deutsche"), entered into a Pooling and Servicing Agreement ("PSA") dated June 1, 2004, which provided for the transfer of certain loans (and related security interests) by Argent Securities, Inc. into the 2004-W9 Trust (the "Trust").[5] On July 26, 2005 (over a year later), Argent (the note maker) actually assigned and transferred

---

indorsements, later described herein. The court took AHMS' oral motion to reopen the record for purposes of admitting AHMS' Exhibit 1 under advisement, and will address that motion below.

[3] *See* Debtor's Exhibit 2.

[4] The court would note that Argent was the original maker of the note, not Argent Securities Inc.

[5] *See* Debtor's Exhibit 3.

the Deed of Trust and Note to Deutsche as Trustee for the Trust.[6]

*B. The Bankruptcy Petition, the Proof of Claim, and the Motions for Relief from Stay*

On November 3, 2006, the Debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code. On November 22, 2006, AMC Mortgage Services, Inc. d/b/a Delaware AMC Mortgage Services, Inc. ("AMC"), as purported loan servicer for Argent, filed a proof of claim (the "POC") for $98,487.23, representing amounts allegedly due and owing under the Note.[7] Attached as Exhibit 3 to the POC was a "Certificate of Assistant Secretary," which provided that prior to January 1, 2005, Ameriquest had serviced the mortgage loans originated by Argent and that effective as of December 31, 2004, Ameriquest had transferred all servicing employees and facilities to AMC.[8]

On April 30, 2008, a Notice of Transfer of Proof of Claim (DE # 48) was filed, purporting to transfer the POC to Citi Residential Lending, Inc. as Loan Servicer for Deutsche Bank National Trust Company, as Trustee, in Trust for the Registered Holders of Argent Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2004-W9 ("Citi").[9] On March 29, 2009, Citi

---

[6] *See* Debtor's Exhibit 4.

[7] *See* Debtor's Exhibit 5.

[8] *Id.*

[9] *See* Debtor's Exhibit 11.

filed a Transfer of Claim Other Than for Security (DE # 56) to Deutsche c/o AHMS.[10]

On July 2, 2009, AHMS filed the Motions for Relief from Stay.  The Motions for Relief from Stay define "Movant" as "AHMS as attorney-in-fact and servicer-in-fact for Deutsche Bank National Trust Company, as trustee in trust for the benefit of the certificateholders for Argent Securities Trust 2004-W9, asset-backed pass-through certificates, series 2004-W9".[11]  The Movant attached a copy of the Note to the Motions for Relief from Stay that was identical to the copy of the Note attached to the POC.  However, unlike AHMS' Exhibit 1 that was offered (post-closing of evidence) at the hearing on the Motions for Relief from Stay (but not yet admitted into evidence as addressed below), the Note that was attached to the Motions for Relief from Stay did not contain any indorsements.

## II.  CONCLUSIONS OF LAW

Before deciding the merits of the Motions for Relief from Stay, the court must first determine whether AHMS is a "party in interest" for purposes of asserting standing under section 362(d) of the Bankruptcy Code.  As recognized by the bankruptcy court in *Litton Loan Servicing, L.L.P. v. Eads (In re Eads)*, 417 B.R. 728, 739 (Bankr. E.D. Tex. 2009), many courts have held that a

---

[10] *See* Debtor's Exhibit 15.

[11] *See* Debtor's Exhibit 16.

mortgage servicer has standing to participate in a debtor's bankruptcy case by virtue of its pecuniary interest in collecting payments under the terms of a note.[12]  Thus, there is not a *per-se* rule prohibiting a servicer from prosecuting a motion for relief from stay.  However, any servicer still must prove that it is a "real party in interest" *vis-a-vis* its rights in the Note.  This ultimately requires the court to turn to state law to ascertain the status of AHMS and ownership of the Note.[13]  Under Texas law, in order to collect on the Note, AHMS must prove: (1) the existence of a note; (2) that the Debtor signed the note; (3) that AHMS is the owner or holder of the note; and (4) that a certain balance is due and owing on the note.[14]  Here, based upon the testimony provided by the Debtor at the hearing on the Motions for Relief from Stay, as well as the information set forth in the Debtor's bankruptcy schedules, elements 1, 2, and 4

---

[12] *See In re Tainan*, 48 B.R. 250, 252 (Bankr. E.D. Pa. 1985) (finding that a mortgage servicer is a real party in interest for purposes of Fed. R. Civ. Pro. 17(a) in a relief from stay proceeding); *Bankers Trust (Delaware) v. 236 Beltway Inv.*, 865 F. Supp. 1186, 1191 (E.D. Va. 1994) (finding that both lender and servicer have standing to foreclose based upon reading of pooling agreement); *In re Miller*, 320 B.R. 203, 206 n.2 (Bankr. N.D. Ala. 2005) (servicer permitted to litigate motion for relief from stay).

[13] *See In re Woodberry*, 383 B.R. 373, 376 (Bankr. S.C. 2008).

[14] *See SMS Fin., LLC v. ABCO Homes, Inc.*, 167 F.3d 235, 238 (5th Cir. 1999) (citing *Bean v. Bluebonnet Sav. Bank FSB*, 884 S.W.2d 520, 522 (Tex. App.-Dallas 1994, no writ)).

are not in controversy.[15]  Thus, the only element left for the court to decide is whether AHMS is the owner or holder of the Note.

At the Final Hearing, AHMS offered (but the court has not yet admitted) an alleged true and correct copy of the Note.  As stated above, AHMS' version of the Note was materially different from the version of the Note introduced into evidence by the Debtor (and admitted by the Court)[16] in that it contained two indorsements at the bottom of the last page.  The first indorsement read "pay to the order of Ameriquest Mortgage Company without recourse Argent Mortgage Company" and was signed by Wayne Lee and John P. Grazer.  The second indorsement read "pay to the order of _____ without recourse Ameriquest Mortgage Company" and was signed by Kirk Langs and John P. Grazier.

The second indorsement created what is commonly referred to as a note indorsed in "blank."  Specifically, section 3.205(b) of the Texas Business and Commerce Code ("Tex. Bus & Comm. Code") provides that if an indorsement is made by the holder of an instrument and is not a special indorsement,[17] it is a "blank

---

[15] At the hearing on the Motions for Relief from Stay, the Debtor testified that the Note presented by AHMS contained her signature.  Moreover the Debtor's bankruptcy schedules (AHMS' Exhibit 4) show amounts due under the Note.

[16] See Debtor's Exhibit 1.

[17] If an indorsement is made by the holder of an instrument, whether payable to an identified person or payable to bearer, and

indorsement" and when indorsed in blank, an instrument becomes payable to the bearer and may be negotiated by transfer of possession alone until specially indorsed.[18] Additionally, section 3.201 of the Tex. Bus. & Comm. Code states:

> (a) "Negotiation" means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder.
>
> (b) Except for negotiation by a remitter, if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder. If an instrument is payable to bearer, it may be negotiated by transfer of possession alone.[19]

Thus, since AHMS is in possession of a promissory note indorsed in "blank," it is, by definition, a "holder" under section 3.201(a). This, of course, assumes that all of the indorsements on the Note are authentic and authorized.

Section 3.308(a) of the Tex. Bus. & Comm. Code states:

> In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument are admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is

---

the indorsement identifies a person to whom it makes the instrument payable, it is a "special indorsement." *See* Tex. Bus. & Comm. Code Ann. § 3.205(a) (Vernon 1996). When specifically indorsed, an instrument becomes payable to an identified person and may be negotiated only by the indorsement of that person. *Id.*

[18] *See* Tex. Bus. & Comm. Code Ann. § 3.205(b) (Vernon 1996).

[19] *See* Tex. Bus. & Comm. Code Ann. § 3.201 (Vernon 1996).

> ***presumed*** to be authentic unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature. . . .[20]

The term "presumed" is defined in section 1.206 of the Tex. Bus. & Comm. Code and provides that whenever a fact is "presumed" under the Tex. Bus. & Comm. Code, the trier of fact must find the existence of the fact unless and until evidence is introduced that supports a finding of its nonexistence.[21] Thus, AHMS is not required to prove that the indorsements on the Note are valid and authentic unless and until the Debtor overcomes the presumption by putting on evidence that supports a finding that the indorsements on the Note were somehow forged or unauthorized.

Here, although the Debtor did not present any evidence that the indorsements were somehow forged or unauthorized, the court finds that this was not because the Debtor does not dispute the authenticity or enforceability of the indorsements,[22] but rather because the Debtor did not have an opportunity or for that matter, a reason, to present such evidence at the hearing on the Motions for Relief from Stay. This is because AHMS never offered

---

[20] *See* Tex. Bus. & Comm. Code Ann. § 3.308(a) (Vernon 1996) (emphasis added).

[21] *See* Tex. Bus. & Comm. Code Ann. § 1.206(a) (Vernon 2003).

[22] In fact, the Debtor raised the issue of whether the copy of the Note attached to the Motions for Relief from Stay was "true and correct" in paragraph 3 of its response to the Motions for Relief from Stay. *See* AHMS' Exhibit 12.

a copy of its "version" of the Note (*i.e.*, the "version" with the indorsements), which in this case would have been AHMS' Exhibit 1, into evidence. As a preliminary matter, the court acknowledges AHMS' oral motion to reopen the record made during closing arguments for the purpose of admitting AHMS' Exhibit 1 into evidence. However, the court, in its discretion,[23] having considered the oral motion to reopen, finds that, in this case at least, the prejudice to the Debtor in allowing AHMS' Exhibit 1 to be admitted into evidence is far too great. Here, because AHMS never offered Exhibit 1 for admission into evidence during its case in chief or otherwise during the evidentiary-portion of the hearing, counsel for the Debtor chose not to raise the issue of the authenticity of the indorsements during the hearing, a right that is clearly contemplated under the Texas Bus. & Comm. Code. Therefore, the court will not admit AHMS' Exhibit 1 into evidence and as a result, AHMS has ultimately failed to meet the requirements under Texas law for enforcing the Debtor's obligations under the Note.[24]

---

[23] *See Gas Ridge v. Suburban Agric. Props.*, 150 F.2d 363, 366 (5th Cir. 1945).

[24] When considering the copy of the Note that *is* in evidence as Debtor's Exhibit 1 (*i.e.*, the copy with no indorsements) the court finds that AHMS has failed to establish the requisite chain of title or other proof that would show that it was the owner or holder of the Note and, thus, a "real party in interest" with standing to prosecute the Motions for Relief from Stay.

**III. CONCLUSION**

In conclusion, this decision ultimately comes down to standing and not on whether AHMS has met the specific requirements of sections 362(d)(1) and (2) of the Bankruptcy Code. Further on the standing issue, the court would note that it was troubled by the somewhat lackluster evidence presented by AHMS in establishing the chain of title with regards to the Note (*e.g.*, failure to have a witness with personal knowledge or other reliable evidence to establish a chain of custody), and the court would caution AHMS in filing a subsequent motion for relief from stay without better presenting how this Note ultimately came into its possession.

Accordingly,

**IT IS ORDERED** that the Motions for Relief from Stay are denied without prejudice to refiling to address the deficiencies as set forth above; and it is further

**ORDERED** that this ruling is without prejudice to the Debtor seeking reimbursement for its attorney's fees and costs in defending the Motions for Relief from Stay.

**###END OF ORDER###**