

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

**Signed November 21, 2011**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| YELITZA JEAN PASTRAN, | § | CASE NO. 06-34728-SGJ-13 |
| | § | |
| DEBTOR. | § | |

### _AMENDED_ MEMORANDUM OPINION AND ORDER GRANTING APPLICATION OF CHAPTER 13 DEBTOR'S COUNSEL FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES, BUT DENYING FEE-SHIFTING REQUEST [DE ## 84 & 100][1]

---

[1] On September 20, 2011, this court entered a _Memorandum Opinion and Order Denying Application of Chapter 13 Debtor's Counsel for Allowance of Compensation and Reimbursement of Expenses (Including Fee-Shifting Request) [DE ## 84 & 100]_ (the "Original Opinion and Order") [DE # 111].  On October 4, 2011, counsel for the Debtor, Theodore O. Bartholow, III, filed a Motion to Reconsider Order Denying Application for Compensation (the "Motion to Reconsider") [DE # 113], requesting that the court reconsider the Original Opinion and Order and enter an amended order allowing his requested fees and costs in the amount of $29,992.45, with $20,992.45 to be paid directly by the Debtor or from funds held in trust by his law firm.  However, the Motion to Reconsider did not request any further consideration of the court's denial of the fee-shifting request.  No party in interest objected to the Motion to Reconsider.  On November 17, 2011, the court held a lengthy hearing on the Motion to Reconsider, and ultimately decided to grant the Motion to Reconsider—for the reasons now discussed in the new Section III.B. of this Amended

1

Before this court is the Application of Chapter 13 Debtor's Counsel for Allowance of Compensation and Reimbursement of Expenses [DE # 84] and the Supplement thereto [DE # 100] (collectively, the "Compensation Application"). The Compensation Application is not a typical fee application, that merely seeks an award of attorney's fees and expenses, payable from the Debtor's bankruptcy estate.[2] Rather, the application contains a request for **fee shifting**. Specifically, Debtor's counsel not only seeks an award of $29,177.50 in fees and $814.95 in expenses, pursuant to 11 U.S.C. § 330 (reimbursable from the Debtor) but, more significantly (and really primarily), seeks reimbursement for attorney's fees and costs from two mortgage loan servicers and the law firm who represented them in connection with certain motions to lift stay they filed, which motions were allegedly lacking in foundation and caused needless fees to be incurred by the Debtor. The authority cited by the Debtor for the fee shifting is 28 U.S.C. § 1927, 11 U.S.C. §

Memorandum Opinion and Order. Thus, the court issues this Amended Memorandum Opinion and Order—allowing the fee and expense request to be paid from Debtor-funds, but keeping intact the court's decision on fee shifting.

[2] Note, that in the Northern District of Texas, a Chapter 13 debtor's counsel need not file a formal fee application in order to be paid compensation for his work representing a debtor **unless** counsel is seeking more than the "Standard Fee" of $3,000, plus filing fees and costs. *See* General Order 2010-01 (entitled, "Amended Standing Order Concerning all Chapter 13 Cases"), ¶ 10(c).

105(a), and the court's inherent authority.

The court has core jurisdiction in this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A),(G) and/or (O).  For the reasons stated below, the court is granting the Compensation Application, but is denying the request for fee shifting.  This memorandum opinion constitutes the court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.  Where appropriate, a finding of fact will be construed as a conclusion of law and *vice versa*.

## I. FINDINGS OF FACT

1.    On November 3, 2006, the Debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code.

2.    The Debtor has a homestead at 309 Shelly Circle, Irving, Texas, 75061 (the "Homestead"), which is encumbered with an Adjustable Rate Note and Deed of Trust (for simplicity hereafter, the "mortgage loan").

3.    The Debtor's Bankruptcy Schedules indicated that she was behind in payments on her Homestead mortgage loan at the date of the filing her bankruptcy petition—estimating that she was approximately $5,154 in arrears.  The Debtor listed AMC Mortgage Services as the secured creditor on the Homestead mortgage loan [DE # 1, Schedule D].

*A.    AMC as Servicer for Argent*

4.    On November 22, 2006, the entity AMC Mortgage Services,

3

Inc. ("AMC"), filed a Proof of Claim in respect of the Homestead mortgage loan in this case. AMC indicated in the Proof of Claim that it was a loan servicer for the actual secured creditor Argent Mortgage Company, LLC ("Argent"). *See* Proof of Claim No. 1 on the Official Claims Register of the Bankruptcy Clerk.

5. Apparently, this Proof of Claim contained an error, in that AMC was servicing the mortgage loan for Deutsche Bank National Trust Company ("Deutsche"), as Trustee, in Trust for the Registered Holders of Argent Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2004-W9, not Argent.

B. *Citi as Servicer for Deutsche*

6. In any event, at some point post-petition, Citi Residential Lending, Inc. ("Citi") took over servicing the Homestead mortgage loan from AMC. Additionally, at some point, the Debtor stopped making post-petition payments on her mortgage loan.

7. On March 14, 2008, the law firm of Hughes, Watters & Askanase, LLP ("HWALLP") filed a Motion for Relief from Stay (the "Citi Stay Lift Motion") [DE # 41], on behalf of Citi, as Loan Servicer for Deutsche, seeking permission for Citi to exercise contractual and state law remedies as to the Homestead mortgage loan. At this juncture, no notice of transfer of claim had been filed in the case, transferring the claim in respect of the Homestead mortgage loan from AMC to Citi. Moreoover, the copy of

the mortgage loan note attached to the Citi Stay Lift Motion was unindorsed and there was no assignment or other chain of title documentation showing that the note was payable to anyone other than the original Lender, Argent. The Debtor questioned Citi's standing.

8. On April 30, 2008, approximately six weeks after the Citi Stay Lift Motion was filed, a Notice of Transfer of Claim was filed, indicating that the AMC proof of claim in respect of the Homestead mortgage loan had been transferred or assigned to Citi pursuant to an "Assignment Agreement" (not attached—nor was any other chain of title documentation). Then, on June 19, 2008, just days prior to a final hearing on the Citi Stay Lift Motion, HWALLP withdrew the Citi Stay Lift Motion. The court heard reports of the withdrawal at a subsequent hearing held on June 23, 2008.

C. *AHMSI as Servicer for Deutsche*

9. On March 29, 2009, many months later, Citi filed a Transfer of Claim Other Than for Security [DE # 56], this time effectively transferring the servicing of the Debtor's loan to yet another entity, American Home Mortgage Servicing Inc. ("AHMSI").

10. On July 2, 2009, AHMSI filed its own Motion of American Home Mortgage Servicing, Inc., as Attorney-in-Fact and Servicer-in-Fact for Deutsche Bank National Trust Company, as

Trustee in Trust for the Benefit of the Certificate Holders for Argent Securities Trust 2004-W9, Asset-Backed Pass-Through Certificates, Series 2004-W9 for Relief from the Automatic Stay of an Act Against Property of 11 U.S.C. § 362 Regarding 309 Shelly Circle, Irving, Texas 75061; and (b) the Motion of American Home Mortgage Servicing, Inc., as Attorney-in-Fact and Servicer-in-Fact for Deutsche Bank National Trust Company, as Trustee in Trust for the Benefit of the Certificate Holders for Argent Securities Trust 2004-W9, Asset-Backed Pass-Through Certificates, Series 2004-W9 for Relief from the Automatic Stay of an Act Against Co-Debtor of 11 U.S.C. § 1301 (collectively, the "AHMSI Stay Lift Motions") [DE ## 58 & 59].

11.   The court held a final hearing on the AHMSI Stay Lift Motions on February 1, 2010 (the "Final AHMSI Hearing"). Certain post-trial briefing was subsequently submitted [DE ## 75 & 76], when thorny standing and evidentiary issues percolated to the surface during the Final AHMSI Hearing.

12.   On July 13, 2010, the court issued a Memorandum Opinion and Order ultimately denying the AHMSI Stay Lift Motions (the "Opinion") [DE # 80].[3]  The Opinion contains a detailed discussion of the thorny standing and evidentiary problems that surfaced at the Final AHMSI Hearing.  Specifically, the court

---

[3]  The Opinion was subsequently amended on July 30, 2010 to change the term "note maker" to "note payee" on p. 3 of the Opinion.

found that AHMSI failed to meet its evidentiary burden at the hearing of establishing it had actual standing to pursue collection remedies under the mortgage loan note as either the holder or owner (*i.e.*, servicer or lender) of the note.  First, AHMSI had not attached documents to the AHMSI Stay Lift Motions to show chain of title and holder status.  Then, at the Final AHMSI Hearing, AHMSI showed up with a different version of the mortgage loan note than had been attached to the AHMSI Stay Lift Motions, which was indorsed in blank.  However, AHMSI's lawyer did not move to have it admitted into evidence.  Moreover, the AHMSI witness was not able to competently testify from personal knowledge regarding holder or chain of custody issues.  In denying the AHMSI Stay Lift Motions, the court indicated that the denial was without prejudice to AHMSI refiling a motion and adequately proving up its holder status.  Additionally, the court found that the court's ruling was without prejudice to the Debtor seeking reimbursement for its attorney's fees and costs in defending the AHMSI Stay Lift Motions.

13.  On September 13, 2010, counsel for the Debtor, Theodore O. Bartholow, III ("Debtor's Counsel"), filed an Application of Debtor's Counsel for Allowance of Compensations and Reimbursement of Expenses (the "Original Application") [DE # 84], which requested that the court award him $29,177.50 in attorney's fees and $814.95 in expenses for work performed in connection with the

7

defense of the Citi Stay Lift Motion and the AHMSI Stay Lift Motions. To be clear, the Original Application not only requested approval of such fees as reasonable and necessary under *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974) and *Am. Benefit Life Ins. Co. v. Braddock (In re First Colonial Corp. of Am.)*, 544 F.2d 1291, 1299 (5th Cir. 1977), *cert. denied*, 431 U.S. 904 (1977), but it also requested an order directing that Citi, AHMSI and HWALLP pay these fees and expenses, effectively shifting the burden to pay from the Debtor to Citi, AHMSI and HWALLP.[4]

14. On October 13, 2010, this court held a hearing on the Original Application. At the hearing, the court expressed concerns about adequate and proper notice being given to all parties of the fee-shifting aspect of the Original Application. The court then instructed counsel for the Debtor to file a supplement to the Original Application disclosing the exact fee shifting-allocation being requested as to various parties (and counsel) and also disclosing the legal authority being relied upon.

---

[4] Specifically, Debtor's Counsel allocated $13,755 in fees defending the Citi Stay Lift Motion (sought from Citi) and $15,267.50 in fees defending the AHMSI Stay Lift Motions (sought from AHMSI). Additionally, Debtor's Counsel also allocated $155.00 in fees expended due to the threat of a motion for relief from stay by HWALLP early on in the case. Debtor's Counsel asked that HWALLP be held jointly and severally liable for the entire amount of fees and expenses since it had filed and prosecuted **both** the Citi Stay Lift Motion and the AHMSI Stay Lift Motions.

15. On February 25, 2011, the Debtor filed a Supplement to Debtor's Application for Compensation (the "Supplement") [DE # 100]. The Supplement asserted that "neither the Citi or AHMSI motions for relief should have been filed because the motions lacked foundation in fact or law because Citi, AHMSI and their counsel, HWALLP, knew or should have known that they lacked foundation."[5] As such, Debtor's Counsel contended that all of the Debtor's attorney's fees and costs incurred in the defense of the AHMSI Stay Lift Motions and the Citi Stay Lift Motion were incurred needlessly and that such fees and costs should be charged to the moving parties and their attorneys pursuant to the court's broad authority under 11 U.S.C. § 105(a), the court's inherent authority, and 28 U.S.C. § 1927.[6]

16. On April 26, 2011, the court held a hearing on the Compensation Application. After hearing all of the evidence, the court deduced that Debtor's Counsel's request for shifting its fees centered around two main issues: (1) the AHMSI Stay Lift Motions represented that the attached note to the AHMSI Stay Lift Motions was a true and correct copy, when, in fact, there was a more "updated" version of the note that contained additional indorsements; and (2) the witness AHMSI brought to the final

---

[5] *See* Supplement at p. 1.

[6] The Debtor did not request any form of fee shifting as a sanction pursuant to Federal Rule of Civil Procedure 11 and Federal Rule of Bankruptcy Procedure 9011.

hearing did not have personal knowledge of the facts and circumstances surrounding the signing and transfer of the Debtor's note and thus, was unable to appropriately prove up AHMSI's loan documents.[7]

## II. CONCLUSIONS OF LAW

When the Original Application was first presented by Debtor's Counsel, the court had some initial concern that Debtor's Counsel was, essentially, seeking Rule 11 sanctions without having adhered to the steps in Rule 11. Federal Rule of Civil Procedure 11 and Federal Rule of Bankruptcy Procedure 9011 require that a motion for sanctions be made separately from any other motion and describe the specific conduct that has allegedly been committed in violation of the rule. *See* Fed. R. Civ. P. 11(c)(2); Fed. R. Bankr. P. 9011(c)(1)(A). Moreover, even where a motion is served, it cannot be filed with the court unless, within 21 days after it has been served on the party subject to the motion, there has not been withdrawal of the problematic pleading or other appropriate correction. *See* Fed. R. Civ. P.

---

[7] The request for fee-shifting as to the Citi Stay Lift Motion revolved around the fact that Citi filed its motion not only at a time when AMC was the servicer of record (according to the Proof of Claim on file) but Citi's motion did not attach proof of holder status. Then the Citi Stay Lift Motion was ultimately withdrawn by Citi on June 19, 2008 (on the eve of a final hearing). Citi and the Debtor reached a settlement prior to the Hearing on the Compensation Application, and the Debtor withdrew its claims for attorney's fees and costs ***only*** as to Citi in exchange for Citi paying the Debtor $9,000.

11(c)(2); Fed. R. Bankr. 9011(c)(1)(A). The purpose of this mandatory safe-harbor provision is to protect litigants from sanctions, formalize procedural due process considerations such as notice for the protection of the party accused of sanctionable behavior, and encourage the withdrawal of papers that violate the rule without involving the court. *See Roth v. Green*, 466 F.3d 1179, 1192 (10th Cir. 2006), *cert. denied*, 552 U.S. 814 (2007); *see also Cadle Co. v. Pratt (In re Pratt)*, 524 F.3d 580, 585-87 (5th Cir. 2008). As noted herein, the Debtor and her counsel did not choose this option for requesting reimbursement of its attorney's fees; rather the Debtor requested that the court should require Citi, AHMSI and HWALLP to pay for her attorney's fees pursuant to 28 U.S.C. § 1927, the court's inherent authority, and Section 105(a) of the Bankruptcy Code.

A.    *The Court's Ability to Shift Fees Under 28 U.S.C. § 1927*

First, the Debtor has cited 28 U.S.C. § 1927 as authority for requiring HWALLP and AHMSI to pay for her attorney's fees and expenses incurred in defending the Citi Stay Lift Motion and the AHMSI Stay Lift Motions.[8]  Specifically, Section 1927 provides that:

> Any **attorney** or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy

---

[8] Recall that Citi has settled with the Debtor as to the fee shifting issues. *See* note 7 herein.

personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.[9]

Thus, at the outset, it should be noted that 28 U.S.C. § 1927 is not applicable to AHMSI (or Citi, for that matter) as they are not attorneys or persons admitted to practice before the court. *See Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525 (5th Cir. 2002); *see also In re Butan*, No. H-09-0894, 2009 WL 6509350, at * 2-4, (Bankr. S.D. Tex. Sept. 15, 2009).

In any event, as to HWALLP, the Fifth Circuit has interpreted this statute as requiring evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court. *See Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998). Moreover, the Fifth Circuit has noted that 28 U.S.C. § 1927 should be sparingly applied, and "except when the entire course of proceedings were unwarranted and should neither have been commenced nor persisted in, an award under 28 U.S.C. § 1927 may not shift the entire financial burden of an action's defense." *FDIC v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir. 1994)

---

[9] 28 U.S.C. § 1927 (emphasis added). The Fifth Circuit has expressly held that bankruptcy courts have the ability to impose sanctions under 28 U.S.C. § 1927. *See Citizens Bank & Trust Co. v. Case (In re Case)*, 937 F.2d 1014, 1023 (5th Cir. 1991); *but see, e.g., In re Courtesy Inns, Ltd., Inc.*, 40 F.3d 1084, 1086 (10th Cir. 1994) (holding that a bankruptcy court was not a "court of the United States," and thus lacked jurisdiction to sanction Chapter 11 debtor's president for having filed the petition in bad faith); *Miller v. Cardinale (In re Deville)*, 361 F.3d 539, 546 (9th Cir. 2004) (finding that a bankruptcy court was not a "court of the United States").

(*citing Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. 1991)).

The court, having considered the evidence and arguments presented by the parties, finds that HWALLP did not act with bad faith, improper motive, or reckless disregard of its duty to the court as to the AHMSI Stay Lift Motions or the Citi Stay Lift Motion.  First, as stated in the court's Opinion, the AHMSI Stay Lift Motions ultimately came down to standing.  The court was certainly troubled by the somewhat lackluster evidence presented at the Final AHMSI Hearing, but the court does not think that forgetfulness in offering a piece of evidence or carelessness when choosing the proper/best witness to prove up one's case necessarily rises to the level which would allow this court to assess the Debtor's attorney's fees against HWALLP under Section 1927.  Second, as to the request for fees against HWALLP for its involvement in the Citi Stay Lift Motion, the court does not find that HWALLP acted in bad faith, with an improper motive, or reckless disregard of its duty to the court.  Although the court was initially bothered by the fact that the Citi Stay Lift Motion was abruptly withdrawn only days before a final hearing (an action that may certainly have raised concerns that AHMSI was recklessly disregarding its duty to the court and causing additional time and expense to be placed on the Debtor), the court is convinced that the withdrawal of the Citi Stay Lift Motion was not done with such an improper purpose.  Rather,

13

withdrawal was done at the request of Debtor's Counsel in hopes that a settlement could be reached between the parties.  *See* Debtor's Exhibit G & HWALLP's Exhibit 16.

B.   *The Court's Ability to Fee Shift Under Its Inherent*
     *Authority and Section 105(a) of the Bankruptcy Code*

When a party's conduct is not effectively sanctionable pursuant to an existing rule or statute (*i.e.*, Rule 11 or 28 U.S.C. § 1927), it may nevertheless be appropriate for a court to turn to its inherent power to impose sanctions.  *See Chambers v. Nasco, Inc.*, 501 U.S. 32, 50 (1991); *see also Carroll v. The Jaques Admiralty Law Firm, P.C.,* 110 F.3d 290, 292 (5th Cir. 1997).  Inherent sanctioning power is "based on the need to control court proceeding[s] and [the] necessity of protecting the exercise of judicial authority in connection with those proceedings." *Case,* 937 F.2d at 1023.  Thus, a court's inherent power is not "a broad reservoir of power, ready at the imperial hand, but a limited source; an implied power squeezed from the need to make the court function." *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 702 (5th Cir. 1990), *aff'd sub nom. Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).

As to the court's ability to use its inherent power to fee shift, the general rule in federal courts is that a prevailing party cannot recover attorney's fees absent specific statutory authority, a contractual right, or certain special circumstances. *See Aleyska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240,

14

255-60 (1975); *see also Galveston County Navigation Dist. No. 1 v. Hopson Towing Co., Inc.*, 92 F.3d 353, 356 (5th Cir. 1996). This rule "is so venerable and ubiquitous in American courts it is known as the 'American Rule'". *Franzin v. Haynes & Boone, LLP (In re Franzin)*, 413 B.R. 378, 400 (Bankr. N.D. Tex. 2009) (*citing Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310-11 (Tex. 2006)); *see also Crenshaw v. Gen. Dynamics Corp.*, 940 F.2d 125, 129 (5th Cir. 1991).  The American Rule, however, does have several exceptions.

Specifically, the Supreme Court has recognized that courts have the inherent power to issue sanctions against litigants for their bad faith conduct and that a court may assess attorney's fees as a sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Chambers*, 501 U.S. at 43-46; *Aleyska*, 421 U.S. at 258-259.[10]  The threshold for invocation is high and if such inherent power is invoked, it must be exercised with restraint and discretion. *Maquire Oil Co. v. City of Houston*, 143 F.3d 205, 209 (5th Cir. 1998).  Accordingly, a court should only invoke its inherent power if it finds that "a fraud has been practiced upon it or that the very temple of justice has been defiled." *Boland Marine & Mfg. Co. v. Rhiner*, 41 F.3d 997, 1005 (5th Cir. 1995) (*citing Chambers*, 501 U.S. at

---

[10]  Although *Chambers* involved a district court, the inherent powers described by the Supreme Court "are equally applicable to the bankruptcy court." *Case*, 937 F.2d at 1023.

15

46)).

The Fifth Circuit has found that "the 'bad faith' actions must occur in the course of litigation" and that the bad faith exception "does not address conduct underlying the substance of the case; rather, it refers to the conduct of the party and the party's counsel during the litigation of the case." *Rogers v. Air Line Pilots Assoc., Int'l*, 988 F.2d 607, 615-16 (5th Cir. 1993); *Flanagan v. Havertys Furniture Cos, Inc.*, 484 F.Supp.2d 580, 582 (W.D. Tex. 2006). Moreover, the Fifth Circuit has described that the conduct required to invoke the exception to the American Rule must be "callous and recalcitrant, arbitrary, and capricious, or willfull, callous, and persistent." *Galveston County*, 92 F.3d 353, 358 (5th Cir. 1996).

Similarly, a bankruptcy court's authority under Section 105(a) of the Bankruptcy Code also comports with its inherent power to sanction, and some courts have found that such powers are essentially coterminous. *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 284 (9th Cir. 1996) ("By providing that bankruptcy courts could issue orders necessary 'to prevent an abuse of process,' Congress impliedly recognized that bankruptcy courts have the inherent power to sanction that *Chambers* recognized within Article III courts."); *Jones v. Bank of Santa Fe (In re Courtesy Inns, Ltd., Inc.),* 40 F.3d 1084, 1089 (10th Cir. 1994) ("We believe, and hold, that

16

§ 105 intended to imbue the bankruptcy courts with the inherent power recognized by the Supreme court in *Chambers)*; *but see Ginsberg v. Evergreen Sec. Ltd. (In re Evergreen Sec., Ltd.)*, 570 F.3d 1257, 1273 (11th Cir. 2009); *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1196 (9th Cir. 2003); *In re Rimsat, Ltd.*, 212 F.3d 1039, 1049 (7th Cir. 2000).  Section 105(a) of the Bankruptcy Code states that:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making the determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.[11]

Several courts have concluded that Section 105(a) provides a basis for a bankruptcy court to make an award of attorney's fees under certain circumstances.  *In re Paige,* 365 B.R. 632, 637-40 (Bankr. N.D. Tex. 2007); *In re* Brown, 444 B.R. 691, 695 (Bankr. E.D. Tex. 2009); In *re Gorshtein*, 285 B.R. 118, 124 (Bankr. S.D.N.Y. 2002).  However, regardless of whether a bankruptcy court chooses to impose sanctions under its inherent authority or under Section 105(a) of the Bankruptcy Code, it still must make a "specific finding of bad faith."  *In re Parsley*, 384 B.R. 138, 179 (Bankr. S.D. Tex. 2008); *Gorshtein*, 285 B.R. at 124.  In order to better determine if such bad faith has been demonstrated

---

[11] *See* 11 U.S.C. § 105(a).

by the evidence presented here, the court believes it to be a
useful exercise to look at a few cases in which bankruptcy courts
have found that such bad faith existed, specifically in the
factual scenario of a loan servicer prosecuting a motion for
relief from stay.

First, in *In re Brown*, Judge McGuire imposed a relatively
modest sanction against a loan servicer and its counsel under
Section 105(a) of the Bankruptcy Code.[12]  *See Brown*, 444 B.R. at
695.  In *Brown*, Citi Residential Lending, Inc., (the "Servicer"),
filed a motion for relief from the automatic stay, which was
ultimately objected to by the debtor through counsel (ironically,
the same lawyer also involved in our case, Theodore O. Bartholow,
III).  *Id.* at 693.  After reviewing the debtor's objection, the
Servicer sought to withdraw the motion for relief from the
automatic stay.  *Id.*  The bankruptcy court ultimately heard
evidence that the note that was the basis of the Servicer's
motion had been transferred to another loan servicer prior to the
Servicer filing its motion for relief from the automatic stay.
*Id.*  Based on this behavior, the court ultimately found that the
Servicer had failed to present any testimony or other evidence
establishing that its motion for relief from the automatic stay
had a reasonable basis in law or fact, and because a motion for

---

[12] Judge McGuire also imposed sanctions against the loan
servicer's counsel (also coincidentally, the same law firm in
this case, HWALLP) pursuant to 28 U.S.C. § 1927.

relief from the automatic stay to foreclose on a debtor's home must have a high degree of reliability, the court concluded that sanctions were appropriate under Section 105(a) of the Bankruptcy Code. *Id.* at 695. The court would note that although sanctions amounting to $4,675 in attorney's fees were requested by the debtor, the court ultimately awarded only $650 to be paid by the Servicer and its counsel, HWALLP. *Id.*

Judge Bohm, in the case of *In re Parsley,* found that "bad faith" also existed when an attorney made a knowing misrepresentation to the court during his prosecution of a motion for relief from stay. *See Parsley*, 384 B.R. at 180. This knowing misrepresentation was made by an attorney representing a loan servicer with regard to a routine motion for relief from stay. Specifically, the attorney had stated on the record that the motion for relief from stay "was a good motion" in response to questions from the bankruptcy court about whether allegations regarding the payment history as set forth in the motion for relief from stay were "just flat-out wrong." *Id.* The bankruptcy court later heard evidence that the attorney had actual knowledge of the inaccurate factual allegations in the motion for relief from stay (including inaccuracies with the payment history), and this ultimately amounted to a finding of bad faith against the attorney as well as his law firm. *Id.* Interestingly, despite finding such bad faith and ultimately imputing this bad faith on

the attorney's law firm, Judge Bohm did not ultimately issue sanctions against either the attorney or his law firm, as the attorney was ultimately fired (and the Judge believed this to be punishment enough) and the law firm took certain corrective measures in how it handled future motions for relief from stay. Such actions in Judge Bohm's view remedied any bad faith that had occurred in the bankruptcy case. *Id.* at 182-83.

Here, the court does not believe that the evidence submitted rises to the level of "bad faith" as articulated by the Fifth Circuit as well as other bankruptcy courts in this circuit. Although there were certainly some issues with the evidentiary presentation at the final hearing on the AHMSI Stay Lift Motions, which ultimately created a standing issue as articulated in the Opinion, the court does not believe that such behavior amounted to anything that could be characterized as callous, recalcitrant, arbitrary, capricious, willful, callous, or persistent. Similarly, the court does not think that the evidence presented rises to the level of bad faith with regard to HWALLP bringing the Citi Stay Lift Motion.  As articulated earlier, the court does not think that HWALLP's decision to withdraw the Citi Stay Lift Motion, just days before the final hearing, shows bad faith, but if anything, shows a good faith effort to possibly settle matters with Debtor's Counsel.  Accordingly, the court denies the Debtor's request for HWALLP and AHMSI to pay for the Debtor's

20

attorney's fees under either this court's inherent authority or section 105(a) of the Bankruptcy Code.

### III. CONCLUSION

### A.    *No Fee Shifting.*

The court is certainly cognizant of the fact that the mortgage servicing industry does not always show itself to be the perfect, well-oiled machine that one would hope it to be.  As more and more individuals have gone into default on their home mortgages and resorted to seeking bankruptcy protection, bankruptcy courts have seen certain problems that exist in the home mortgage servicing industry, particularly issues when it comes to chain of title and other documentation.  Some of these cases may require bankruptcy courts to take action and issue appropriate orders to ensure that such practices do not continue; however, in this case, the court does not believe it to be a good exercise of discretion to do so.

The court would conclude, on the topic of fee-shifting, by stating that Rule 11 seems to be the more appropriate tool to use when requesting sanctions or fee shifting, not only because it allows a party an opportunity to remedy any mistakes it may have made, but also because it seems to make parties engage in a dialogue which could ultimately facilitate settlement.  The court found it very enlightening to read Debtor's Exhibit G, which was a myriad of emails that were exchanged between Debtor's Counsel

and HWALLP over the approximately 3-year period that this matter
was pending.  From the court's review of these emails, there was
certainly no evidence of inappropriate behavior by HWALLP, AHMSI,
or Citi.  In fact, the overall tone of the emails was quite
professional and courteous.  If anything, this case appeared to
be one primed for settlement, as there were significant
discussions about a possible loan modification.  However,
settlement and/or a loan modification never happened.  Instead,
HWALLP filed the Citi Stay Lift Motion and the AHMSI Stay Lift
Motions with certain chain-of-custody gaps and documentation
errors (first no indorsement; then ultimately an indorsement-in-
blank supplied but not offered into evidence).  While this was
sloppy and bad form (which justified denying stay relief), this,
in and of itself, did not rise to the level of bad faith or
vexatious litigation that would legitimize fee shifting.

B.    *Amendment of Prior Ruling, So as to Allow Debtor's Counsel's*
      *Fees and Expenses, Payable by the Debtor or From Trust Funds*
      *Held by Debtor's Counsel.*

      As noted at footnote 1 of this Amended Memorandum Opinion
and Order, this court, in its Original Opinion and Order, denied
both the fee-shifting request of Debtor's Counsel's Application
as well as **the overall allowance of the fees and expenses and
reimbursement of such from the Debtor**.  On October 4, 2011,
Debtor's Counsel filed his Motion to Reconsider, requesting that
the court reconsider the Original Opinion and Order and enter an

22

amended order allowing his requested fees and costs in the amount of $29,992.45, with $20,992.45 to be paid directly by the Debtor or from funds held in trust by his law firm (Debtor's Counsel has already been paid $9,000 from Citi).  As noted in footnote 1, no party in interest objected to the Motion to Reconsider.  On November 17, 2011, the court held a lengthy hearing on the Motion to Reconsider.  The Debtor testified in support of the Application—even as she was advised that her problems with her mortgage had not yet been resolved and she will almost certainly have continued litigation regarding the mortgage in the future, post-discharge.  The Debtor expressed a full understanding that she still owed a large amount of postpetition arrearages on her mortgage and that this was not going to "go away" by virtue of her likely, imminent discharge.

The court ultimately decided to grant the Motion to Reconsider—but it allows the fees and expenses to be assessed against the Debtor with significant angst.

On the one hand, the work performed by Debtor's counsel was real and was performed at reasonable rates.  Specifically, the court has no doubt about the hours of labor provided, that such work was performed at reasonable rates, that Debtor's Counsel was competent and qualified, and that he provided the tangible benefit of keeping the Debtor in her house for the five years of her bankruptcy case (in fact, "rent-free" for much of the case,

since the Debtor has not paid any mortgage company for several months, due to ongoing concern on the Debtor's part regarding what entity is the holder of the mortgage note and regarding certain fees assessed).  Remarkably, no mortgage servicer/holder has filed a motion to lift stay after this court denied a previous motion to lift stay (without prejudice) due to proof defects by the movant.

On the other hand, this court has grave concerns about what has been accomplished in this case.  And, moreover, do the requested fees and expenses pass muster under Section 330(a)(4)(B) (*i.e.,* has there been the "benefit" to the Debtor that this section contemplates, when representing a chapter 13 debtor)?

To use a phrase popular with politicians, it seems, in many respects, all that has been accomplished here is "kicking the can down the road."  Bankruptcy certainly is, and should be about, ***solving problems***.  Is the Debtor's problem with her mortgage lender on her home solved?  No.  The Debtor is almost certainly looking at more litigation in the state courts, post-discharge, or maybe in another bankruptcy case.  Debtor's Counsel urged vociferously that he has tried mightily to solve the Debtor's problems with her mortgage company, and that despite such problems, he has been able to keep the Debtor in her house thus far.  And Debtor's Counsel urges that he is essentially dealing

24

with a Goliath every time he goes up against a mortgage servicer/holder and requests chain of title, proof of holder status, and information about fees charged, such as inspection and appraisal fees.  Debtor's Counsel also urges that it is unreasonable to always "back down" and enter into an agreed order with a mortgage lender pertaining to a debtor's home and that it would have a chilling effect on debtors and the debtors' bar if the court did not allow fair (albeit large) fees in a case like Ms. Pastran's.

Debtor's Counsel has ultimately persuaded the court that the fees and expenses should be allowed under Section 330(a)(4)(B) of the Bankruptcy Code in the case at bar.  But, again, the court does it with some angst and with no open invitation for attorneys to ask for this in every case. ***Again, the court believes a bankruptcy case should solve problems.***  Here, the court will accept the unrefuted position of the Debtor and her counsel that: (a) the incurred fees and expenses have benefitted the Debtor by keeping her in her home during her five-year case; and (b) there was really no way to provide any more benefit than this to her, given the difficulty they have had in obtaining information from and engaging in dialogue with the mortgage servicer.  However, in all candor, this has been a hard and close call.

Often, bankruptcy is about picking the least-bad solution:

1.  In some cases, the least-bad solution chosen is to negotiate an agreed order with a mortgage servicer/lender—even if

the servicer's chain of title documents are questionable and even if the servicer seems to be asserting some unwarranted fees. This might be the least-bad solution because a debtor does not have much equity in the house and any war will not be worth the cost of the fight.  Or it might be the least-bad solution because the mortgage lender will possibly enter into a mortgage modification after an agreed order is put in place.

2.  In some cases, the least-bad solution may mean litigating with a mortgage servicer.  Such litigation may be fighting a motion to lift stay (or two, as was done here), because one does not believe a servicer can meet its burden of proof at the stay-lift hearing.  Or such litigation may mean objecting to proofs of claim and filing adversary proceedings to seek declaratory judgments about holder status and/or fees charged or other actions taken.  This type of fighting takes time and costs money.  Cost-benefit decisions must be made.

Every case is different.  And Monday morning quarter-backing is difficult when the case is over and the fees have been incurred.  It is frustrating and unfortunate that there is a status quo right now in the real estate markets and home mortgage industry such that there seems to be nothing but least-bad solutions for all concerned.

Accordingly,

**IT IS ORDERED** that the fee-shifting aspect of the Compensation Application is **DENIED.**

**IT IS FURTHER ORDERED** that in all other respects, the Compensation Application is **GRANTED** and that pursuant to Section 330(a)(4)(B) of the Bankruptcy Code, fees and expenses shall be awarded to Debtor's Counsel, to be paid from the Debtor and/or her funds currently being held in trust by Debtor's Counsel.

**###END OF AMENDED MEMORANDUM OPINION AND ORDER###**